B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br>Monique Denise Wheat | **DEFENDANTS**<br>United States Department of Education, Great Lakes Higher Education Coporation |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

This is an adversary proceeding complaint by which the debtor seeks dischargeabilitiy of her student loans from the above defendants, pursuant to U.S.C 11 section 523(a)(8) and Bankruptcy Rule 7001(6). The Plaintiff owes approximately $104,200 to the defendants and paying back this amount would cause an undue hardship on the debtor and the debtor dependents.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☒ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

**FILED**
MAY 1 1 2018
U.S. BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

**RECEIVED**
MAY 1 1 2018
United States Bankruptcy Court
Middle District of Alabama

Case 18-03041    Doc 1    Filed 05/11/18    Entered 05/11/18 15:55:30    Desc Main
Document    Page 1 of 16

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Monique Denise Wheat | BANKRUPTCY CASE NO.<br>18-30745 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Middle District of Alabama | DIVISION OFFICE<br>Montgomery | NAME OF JUDGE<br>Williiam R. Sawyer |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>*[signature]*<br>/s/ Monique D. Wheat, pro se | | |
| DATE<br><br>May 11, 2018 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>*[signature]*<br>Monique D. Wheat, pro se | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Monique Denise Wheat, pro se
1112 Sayre Street
Montgomery, AL 36104
(334)655-5009
monarch22us@gmail.com

RECEIVED
MAY 11 2018
United States Bankruptcy Court
Middle District of Alabama

FILED
MAY 11 2018
U.S. BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

IN THE UNITED STATES

BANKRUPTCY COURT FOR THE

MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re: Monique Denise Wheat,<br>        Debtor,<br>Monique Denise Wheat,<br>        Plaintiff,<br>vs.<br>United States Department of Education, Great Lakes Higher Education Corporation<br>        Defendants, | Case No.: 18-30745<br><br>COMPLAINT: |

**Debtor's Complaint to Determine Dischargeabilitiy of**

**Student Loans Due to Undue Hardship**

**11 U.S.C § 523(a)(8)**

Debtor, Monique Denise Wheat ("Debtor"), alleges the follow:

**Nature of the Action:**

1. This is an adversary proceeding by which the debtor seeks a declaration that repayment of her student loans from the above defendants (collectively, "Defendants") would be an undue hardship under Bankruptcy Code section 523(a)(8) and, therefore, should not be

COMPLAINT: - 1

excepted from discharge under section 523 of the Bankruptcy Code. The Debtor owes approximately $104,200 to the defendants and paying back this amount would be an undue hardship to her and her dependents.

## JURISDICTION AND VENUE

2. The court has jurisdiction over this adversary proceeding under 28 U.S.C §1334 because Wheat's Dischargeabilitiy complaint arises under Title 11. This adversary proceeding is brought pursuant to 11 U.S.C §523(a)(8) and bankruptcy rule 7001(6), this is a core proceeding under 28 U.S.C §157(b)(2)(I). This adversary proceeding relates to the case of In re: Monique Denise Wheat, voluntary petition filed on March 14, 2018 Case No. 18-30745 for relief under Chapter 7 of the Bankruptcy Code, pending in the United States Bankruptcy Court for the Middle District of Alabama. The venue is proper in this district pursuant to 28 U.S.C §1409(a)

## FACTUAL ALLEGATIONS

3. The debtor Monique Wheat married Rayshaun Taylor Sr. on July 18, 2008. The debtor and her now ex-husband (as he will be mentioned by in this compliant) have three children together ages 7, 9, and 11.

4. January 2009 the debtor enrolled at Troy University Montgomery Campus to pursue a Bachelor of Science in Criminal Justice. The debtor graduated December 2012.

5. In July 2010 the debtor ex-husband moved the family to Fort Benning, GA as he joined the United States Army as an active duty solider. While in Fort Benning, Ga the debtor

COMPLAINT: - 2

attempted to gain employment on the military installation and surrounding cities during the time she resided in the area to no avail.

6. In November 2012 the debtor ex-husband moved the family to Anchorage, Alaska per military orders. While in Alaska the debtor obtained employment with different companies but due to the demanding 12 hour rotating shift of one job, the lack of family support, high cost of childcare, the inadvertently effects of the fridge weather, as well as the schedule conflicted of the debtor's ex-husband, it was hard for her to maintain a stable job. At times the amount of pay couldn't offset the cost of childcare for the debtor three small children even at a part-time rate. Childcare in Alaska could range anywhere from $800-$1700 for part time and/or full time per child.

7. In the early part of 2014 the debtor and her ex-husband began experiencing martial complications in which appeared to be irreconcilable.

8. In December of 2014 the debtor decided to go back to school to pursue a Master of Science in Clinical Counseling online at Bellevue University, borrowing student loans for her graduate studies that is owed to the defendants. The debtor's ability to maintain the required academic GPA of 3.0 was affected due to complications in her marriage and health problems at the time, causing the debtor to withdraw after two semesters.

9. In February 2015 the debtor decided to separate from her ex-husband and moved into her own apartment near the military installation. The debtor used the 2014 Alaska

COMPLAINT: - 3

Permanent Fund Dividend known as the Alaska PFD in the amount of $7,536 that she received for her and her dependents to pay her moving expenses; which included her deposit, first month rent, and furniture for her apartment. The remainder of the funds was used to provide continuous care for her three children including childcare, food, clothing, and other monthly living expenses.

10. Shortly after moving into her apartment, the debtor's youngest daughter experienced a severe allergic reaction to pet dander (the debtor youngest daughter is also allergic to dust mites, cats, and milk, she must use daily antihistamine and steroids to control the symptoms to her allergens) this resulted in an emergency move in April 2015 per doctor orders. The debtor and her ex-husband divided their tax return evenly and the debtor was able to us the funds to move into a new apartment. The debtor didn't have savings at the time and was planning on using the money to save and make monthly ends meet for her and her dependents.

11. In July 2015 the debtor ex-husband was charged with driving under the influence resulting in his discharge from the Army. The DUI resulted in over $1,100 in towing and administrative fees, putting the debtor in a financial strain.

12. In August 2015 the debtor filled for a divorce Alaska Case No. 3AN-15-09362CI.

13. In October 2015 debtor used their 2015 Alaska PFD in the amount of $8,288 to pay for her ex-husband DUI requirements for the state of Alaska, the remainder to offset their monthly living expenses and the continuous care of her three children.

COMPLAINT: - 4

14. In May 2016 debtor ex-husband moved to Columbus, Ga with a family member. Shortly after his move the debtor experienced a great amount of stress resulting in her going to the hospital, where she was diagnosed with Paroxysmal Supraventricular Tachycardia known as PSVT with the possibility of Atrial Fibrillation which was undetermined at the time due to the debtor needing further testing.

15. PSVT is an episode of rapid/high heartbeat that can happen suddenly, normal heartbeat ranges from 60-100 beats per minute, people with PSVT heartbeat can range from 160-250 beats per minute, suddenly without notice or warning and can last for minutes to hours. Symptoms the debtor suffer from because of PSVT is heart palpations, shortness of breath, chest pain and fatigue. Due to the nature and severity of her PSVT the debtor was placed on diltiazem a channel blocker for daily use and metoprolol a beta blocker for as needed use.

16. In addition to her diagnosis of PSVT the debtor also has a history of asthma. The debtor asthma is treated with maintenance medications such as Flovent, Advair, and nebulizers, and as well as rescue inhalers such as albuterol. The debtor has several years of breathing complications, that at times interfere with her daily living and the care of her dependents. Additional complications of asthma the debtor experience includes: wheezing, shortness of breath, frequent respiratory infections, persistent coughs, chest tightening, and anxiety.

17. The debtor and her ex-husband divorce finalized June 2016. After the divorce the debtor decided to stay in Alaska due to the lack of funds to move at the time. the debtor health complications made it hard to maintain in Alaska alone, she constantly missed days and weeks

COMPLAINT: - 5

from work. Later that month the debtor moved into a small one-bedroom apartment with her three children to offset her cost of living, so she could save money to move back to Alabama.

18. In December 2016 the debtor used their 2016 Alaska PFD in the amount of $4,000 to purchase tickets home to Alabama.

19. In January 2017 the debtor placed her vehicle in storage and moved home to Montgomery, Alabama. She moved with her best friend in an upscale apartment dividing rent the amount of $1,069 plus cost of utilities. The debtor couldn't afford to reside there, but she had no other place to go.

20. In February 2017 the debtor began working for SafetyNet as a behavioral aide making $10 an hour. One of the job duty requirements was physical restraining of youth, potential staff members needed clearance by a physician to perform the job duties. The debtor was sent to an urgent care center to receive clearance to perform the physical duties of the job. Upon giving her health history to the physician, who in return limited the debtor of any physical and strenuous activities due to her PSVT and Asthma. After turning in the physical the debtor was removed from the job assignment.

21. In April 2017 the debtor began working through Malone Staffing as a vehicle inspector making $8 an hour. The debtor was facing a great deal of financial hardship due to low wages, cost of monthly expenses, and lack of transportation. The debtor ex-husband began working later that month and was able to start giving the debtor $400 a month in child support.

COMPLAINT: - 6

22. The debtor is the primary care provider of her mother, who has a long history of mental and physical illnesses, resulting in her mother in and out of mental institutions and hospitals. In recent years the debtor mother conditions have worsen. The debtor mother has a diagnosis of bipolar and depression that causes an unusual shift in mood, energy, activity level, and ability to complete daily tasks. The debtor mother mood episodes cause her to feel sad, down, hopeless, with constant thoughts of suicide. The debtor mother also suffers from schizophrenia which is a long-term mental disorder that affects how a person feel, think, and behaves throughout the day.

23. The debtor's mother suffers from congestive heart failure which is a heart condition in which the heart doesn't pump enough blood to meet the needs of the body. The blood moves thought the body at a slower rate than normal resulting in the debtor's mother to experience severe water retention in her lower extremities called edema, affecting the debtor mother's ability to walk; other symptoms include, irregular heartbeat, dizziness, fatigue and weakness as symptoms of congestive heart failure.

24. In June 2017 the debtor mother experienced a severe life threaten allergic reaction to lisinopril as a result she developed angioedema and was hospitalized with a tracheotomy for several weeks. The debtor stayed at the hospital for the duration of her mother's stay, often leaving her separated from her children and missing work.

COMPLAINT: - 7

25. In July 2017 the debtor brother paid for her vehicle out of storage in Alaska to Alabama so that she could have adequate transportation to care for their mother and to better support her children.

26. The debtor youngest daughter suffers from a condition called Immune/Idiopathic Thrombocytopenic Purpura known as ITP. This is a rare blood disorder in which the immune systems destroy the blood platelets necessary for normal blood clotting. Symptoms the debtor daughter experience includes petechia of the skin, severe bruising, severe headache, fatigue and risk of internal bleeding. The normal blood platelet ranges are 150,000-450,000 often written as 15-45.

27. In August 2017 the debtor's daughter platelet level drop to a dangerous level of 2,000 written as 2. She was rushed to UAB Children Hospital in Birmingham, where she underwent several treatments to increase her platelets, she did not respond well to the treatments and contracted general meningitis as a result. She was released from the hospital a week later. Two weeks later her blood platelets numbers reached a dangerous level of 2,000 written as 2 and she was rushed back to UAB Children Hospital. They continued the intravenous immune globulin treatment and placed her on a long-term low dosage of prednisone to maintain and stabilize her blood platelets. The debtor had to make several trips to UAB Children Hospital for monitoring as well as monthly CBC blood lab draws to monitor her daughter blood platelets count.

COMPLAINT: - 8

28. In September 2017 the debtor best friend moved out of their shared apartment, which resulted in severe financial strain on the debtor as she was already struggling to make ends meet for her and her dependents. Later that month the debtor mother was hospitalized for an overdose, she was on life support with a tracheostomy for over three weeks.

29. In October 2017 the debtor lost her job at the temp agency due to attendance as she had to care for her mother and her daughter. Later that month the debtor used their Alaska PFD in the amount of $3,987 to catch up on past due bills, pay her car note which was behind more than $1400 at the time and pay the cost to take a CNA training course in Columbus, Ga. The debtor left her children in the care of her sister for two months to complete the CNA training program. The debtor felt the need to find a job training skill that will allow her to bring in income to care for her family.

30. In November 2017 the debtor best friend ended the lease to their shared apartment leaving the debtor out of a place to stay temporarily.

31. In December 2017 the debtor found a private homeowner that rented her a two-bedroom duplex for $500 a month.

32. In January 2018 the debtor obtained a job at Baptist South Hospital in Montgomery, AL working as a Patient Care Tech making $10.50 an hour, with a $1 pay differential after certain hours of the evening.

COMPLAINT: - 9

33. The debtor continues to have trouble making ends meet often receiving help from local churches to pay the cost of her utility bills. The debtor is living fugal with having only internet and spend $40 in entertainment outside of her normal expenses, both are to accommodate her children with school activities, researches, and projects.

34. While evaluating the debtor's claim of "undue hardship, to determine whether requiring repayment of her student loans would constitute as undue hardship decision", that governs under the defendants DCL ID: GEN-15-13 regulation (34 C.F.R 685.212(c) Direct, (34 C.F.R. §§ 682.402(i)(1)FFELP and 34 C.F.R §§ 674.49(c)(Perkins)The debtor has filed bankruptcy due to factors beyond her control. The debtor has faced a divorced from her ex-husband, who also lost his job, these events resulted in a significant loss amount of the family's income that the debtor does not foresee regaining in the future. The divorce and the debtor's ex-husband losing his job has caused a great amount of financial hardship and stress for the debtor.

35. While evaluating the debtors claim of "undue hardship" to determine whether the debtor attempted to maximize her income, as a list of factors to use when considering your decision that governs under the defendants DCL ID: GEN-15-13 regulation (34 C.F.R 685.212(c) Direct, (34 C.F.R. §§ 682.402(i)(1)FFELP and 34 C.F.R §§ 674.49(c)(Perkins)), the debtor has made several attempts to maximize her income by applying for jobs in the different states she resided. The debtor had a hard time maintaining jobs out of state, due to lack of family support and the cost of childcare often exceeding the amount of disposable income the debtor would usually have remaining each month. The debtor would also apply for job receiving

COMPLAINT: - 10

interviews with no call backs, disqualified for physical limitations or hearing nothing at all after submitting job applications.

36. While evaluating the debtor's claim of undue hardship, to determine whether she made good faith to pay back her student loans, as a list of factors to use when considering your decision that governs under the defendants DCL ID: GEN-15-13 regulation (34 C.F.R 685.212(c) Direct, (34 C.F.R. §§ 682.402(i)(1)FFELP and 34 C.F.R §§ 674.49(c)(Perkins)).The debtor has made good faith to pay back her student loans owed to the defendants. Due to the lack of disposable income the debtor hasn't made an actual payment on her student loans, the debtor monthly payment on her student loans was $1,122 a month. Instead the debtor contacted the defendants to make several arrangements for forbearances and deferments after her student loans became due. The debtor was granted a six-month forbearance once in 2016.

37. In January 2017 the debtor's student loans was past due $3,240, she attempted to contact the defendants for a forbearance or deferment. The defendants informed the debtor that due to her unemployed status at the time, it's best if she enrolled in the income-driven repayment plan known as the IDRP. The debtor was only granted administrative forbearance, which only lasted for two months while she looked into the IDRP program. The debtor didn't think the 25-year repayment plan was a good idea for her, so she refused to sign up.

38. After the ending of the administrative forbearance, the debtor student loans became due, she feared contacting the defendant due to the amount of pressure she felt to enroll in the IDRP.

COMPLAINT: - 11

39. The debtor account went past due again May 2nd, 2017, she attempted to contact the defendants whom again, only offered administrative forbearance to the debtor to complete an IDRP in which she refused.

40. In October 2017, the debtor contacted the defendants for the third time to discuss getting a forbearance for her student loans, which was past due as much as $6,000 at the time. The defendants once again only offered the debtor the income-driven repayment plan in which the debtor refused previously. The debtor agreed to enroll in the IDRP with only feeling forced to do so. During the time in which she enrolled in the IDRP, the debtor lost her job, struggled to keep her shared apartment, faced an unexpected hospitalization of her daughter and was also dealing with the pressure placed on her, to decide whether to remove her mother from life support at the same time. These listed factors psychological affected the debtor's decision making when she enrolled in the income-driven repayment plan.

41. While evaluating the claim of undue hardship as to whether the debtor pursued available income-driven repayment plans as a list of factors to use when considering your decision that governs under DCL GEN-15-13 regulation (at 34 C.F. R 685.212(c) Direct, (34 C.F.R. §§ 682.402(i)(1) FFELP and 34 C.F.R §§ 674.49(c)(Perkins)), the debtor has used available income-driven repayment plans. The repayment plans don't justify the debtor ability to repay any student loan amount while repayment balance is at a zero-dollar amount. The debtor is also living below the 150% poverty line, the debtor expenses exceeds her monthly income by a significant amount, she doesn't foresee any changings in the future.

COMPLAINT: - 12

42. Therefore, under the current IDRP the debtor inability to pay will remain pass the current term of the income-driven repayment plan, in which will result in a tax forgiveness of debt that will in return create a tax debt obligation on the debtor with the IRS. The age of the debtor will surpass 50 years of age in which her income will be limited, taking into other accounts her health, her dependents, and environmental factors. The current repayment plan isn't sufficient to the debtor and has caused a great deal of psychological stress on the debtor whom still have the student loan debt and accruing interests at a rate that she will never be able to repay.

43. While evaluating the claim of undue hardship to determine whether the student loan debts is the only debt of the debtor, as a list of factors to use when considering your decision that governs under DCL ID: GEN-15-13 regulation (at 34 C.F.R 685.212(c) Direct, (34 C.F.R. §§ 682.402(i)(1)FFELP and 34 C.F.R §§ 674.49(c)(Perkins)),the debtor filed a voluntary petition chapter 7 on March 14, 2018 in the Middle District of Alabama that list her other debts on schedule form E/F in BK Case No. 18-70345, the debtor student loans isn't her only debt

**Conclusion:**

44. Based on the allegations listed above, this court should rule that excepting the debtor student loans owed to the defendants from discharge would impose an undue hardship on the debtor and her dependents. Additional circumstances proven that Wheat's predicaments listed above is likely to continue in the future.

**Wherefore,** the debtor requests judgement as follows:

COMPLAINT: - 13

45. A. A declaration that repaying the Debtor's student loans from the Defendants would constitute an undue hardship within the meaning of 11 U.S.C. Section 523(a)(8).

46. B. A declaration that the Debtor's student loans from the defendants are not excepted from the discharge and are included in the debtor's discharge under the Chapter 7 of the bankruptcy code and any other relief this Court may determine is fair and just.

Respectfully Submitted on this date of May 11th, 2018

/s/ Monique D. Wheat,
Monique D. Wheat, pro se

COMPLAINT: - 14