IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MONIQUE DENISE WHEAT, | ) | |
| | ) | |
| Debtor. | ) | CASE 18-30745-WRS |
| | ) | |
| | ) | CHAPTER 7 |
| MONIQUE DENISE WHEAT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | ADV. NO. 18-03041-WRS |
| | ) | |
| GREAT LAKES HIGHER | ) | |
| EDUCATION CORP.; | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF EDUCATION, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO RULE 9023 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND FRCP 59(E)

Pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure and Rule 59(e) of the Federal Rules of Civil Procedure, Defendant, the United States Department of Education, by and through Louis V. Franklin, Sr., United States Attorney for the Middle District of Alabama, hereby files this memorandum of law in support of its

Motion to Reconsider, Alter, or Amend this Court's July 29, 2019 Order discharging the student loan debt of Debtor-Plaintiff Monique Denise Wheat. (Doc. #33)

## I. STATEMENT OF THE CASE

On March 14, 2018, Debtor-Plaintiff Monique Denise Wheat ("Ms. Wheat") filed a *pro se* Chapter 7 bankruptcy petition in this Court, which was discharged on September 14, 2018. (Case # 18-30745; Doc. # 1, 31). On May 11, 2018, Ms. Wheat filed the instant adversary proceeding seeking to have approximately $104,200 in federal student loan debt discharged, which included loans withdrawn for attendance at Troy University, Central Texas College, American Public University Systems, Bellevue University. A trial on student loan discharge was held before this Court on July 29, 2019, wherein the Court issued oral findings and a ruling discharging Ms. Wheat's student loan debt under Bankruptcy Code § 523(a)(8), and an Order Discharging Debt was entered. (Doc. #33). Based on manifest errors of law, the Department of Education respectfully requests the Court reconsider its Order Discharging Debt for the following three reasons.

First, the Department of Education respectfully submits that the Court failed to adhere to and apply binding precedent when it held that the "certainty of hopelessness" standard was "contrary to the law." Second, the Court mistakenly relied on the "mere possibility of tax liability" as a dispositive basis on which it could discharge Ms. Wheat's student loan debt. Such reliance was improper, however, because it overlooks current tax law with respect to when a debtor must pay taxes on the outstanding balance of her loans at the end of the repayment period−a debtor only pays if her assets exceed her liabilities−and because it ignores that a discharge based solely on projected tax implications, however significant, is improper. Finally, the Department of Education

respectfully submits that by discharging Ms. Wheat's student loans, the Court failed to fulfill Congress's clear intent that Bankruptcy Code § 523(a)(8) proscribe student loan discharges in all but the most severe circumstances. As explained last month by the Fifth Circuit Court of Appeals, an "[i]nability to pay one's debts by itself cannot be sufficient; otherwise all bankruptcy litigants would have undue hardship. The exception would swallow the rule, and Congress's restriction would be meaningless."

Because this Court found that "over time [Ms. Wheat] will raise her wage," then, over time, she can also begin making payments on her loans commensurate with her income. Such a holding is: in line with binding precedent; in accord with Congressional intent; and requires Ms. Wheat, to the degree she is able, to fulfill the obligation she undertook in borrowing tens of thousands of dollars in loans that are presumptively nondischargeable in bankruptcy.

Therefore, the Department of Education respectfully submits that the Order Discharging Debt was based upon a manifest error of law and should be reconsidered or amended.

## II. ARGUMENT & CITATION OF AUTHORITY

Under Rule 9023 of the Federal Rules of Bankruptcy Procedure, which incorporates Rule 59(e) of the Federal Rules of Civil Procedure, motions to alter or amend orders or judgments by the bankruptcy court must be filed "no later than 14 days after entry of judgment." See FRBP 9023; *In re: Dimaria Properties, LLC*, 654 F. App'x 1018, 1020 (11th Cir. 2016).

The three grounds available to support a Rule 9023 motion are as follows: (1) manifest error of fact; (2) manifest error of law; or (3) newly discovered evidence; "[a]

motion for reconsideration is not a vehicle to re-argue issues resolved by the court's decision or to make additional argument on matters not previously raised by counsel." *See Daughtrey v. Rivera ("In re Daughtrey")*, 896 F.3d 1255, 1280 (11th Cir. 2018) (citations and quotations omitted), *cert. denied sub nom. Daughtrey v. Rivera*, 139 S. Ct. 1569, 203 L. Ed. 2d 715 (2019). The Department of Education respectfully submits that the Court's July 29, 2019 Order Discharging Debt was based upon manifest errors of law. The Department identifies the following issues warranting reconsideration.

### A. The Court Misstated And Misapplied the Law Under *Brunner's* Second Prong.

#### 1. The Court Misstated Binding Precedent When It Held The "Certainty of Hopelessness" Standard Was "Contrary to the Law."

First, the Department respectfully submits that this Court misstated, and therefore misapplied, the law with respect to the standard under the second prong of *Brunner's* three-pronged approach to the undue hardship exception to Bankruptcy Code § 523(a)(8). *See Hemar Insurance Corporation of America v. Cox (In re Cox)*, 338 F.3d 1238 (11th Cir.2003) (per curiam) (adopting the test originally announced in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2nd Cir.1987)).

This Court held that the "certainty of hopelessness" standard was "contrary to the law." *See* Hr'g Tr. 39: 4-5. However, Eleventh Circuit precedent mandates application of the "certainty of hopelessness" standard, which this Court has applied in prior opinions. *See Educ. Credit Mgmt. Corp. v. Mosley ("In re Mosley")*, 494 F.3d 1320, 1326 (11th Cir. 2007) ("[T]he court ultimately analyzed [plaintiff]'s case under the complete *Brunner* framework as our precedent requires. Under *Brunner,* undue hardship does not exist simply because the debtor presently is unable to repay his or her student

loans; the inability to pay must be 'likely to continue for a significant time,' such that there is a 'certainty of hopelessness' that the debtor will be able to repay the loans within the repayment period[.]") (citations omitted); *see also ECMC v. Acosta-Conniff ("In re Acosta-Conniff")*, 686 F. App'x 647, 649 (11th Cir. 2017) ("The legal standard applicable to the second prong, which looks to the likelihood that the debtor will continue to be unable to repay the loans, is whether there is a certainty of hopelessness that the debtor will be able to repay the loans within the repayment period.") (citations and quotations omitted).

Courts in the Middle District of Alabama have consistently employed this standard. *See Johnson v. U.S. Dep't of Educ. ("In re Johnson")*, 550 B.R. 874, 880–81 (Bankr. M.D. Ala. 2016) ("The debtor must also show additional circumstances indicating that her state of affairs (that is, the inability to maintain a minimal standard of living if forced to repay the student loans) is likely to persist for a portion of the repayment period . . . These factors must demonstrate 'a certainty of hopelessness' that the debtor will be able to repay the loans within the repayment period.") (citations and certain quotations omitted); *McLaney v. Kentucky Higher Educ. Assistance Authority ("In re McLaney")*, 375 B.R. 666, 676 (M.D. Ala. 2007) ("Under the second prong of the *Brunner* test, "the inability to pay must be 'likely to continue for a significant time,' such that there is a 'certainty of hopelessness' that the debtor will be able to repay the loans within the repayment period.") (citations omitted).

Second, the Court relied on a "totality of the circumstances" standard, which, as noted by the Fifth Circuit Court of Appeals in its July 31, 2019, is a "weaker standard" and not the one mandated by Congress and the courts. *See* Hr'g Tr. at 37: 16-19 (examining "the totality of the debtor's situation as she sits right now"); *Thomas v. U.S. Dep't of Educ.*

*("Matter of Thomas")*, No. 18-11091, 2019 WL 3419379, at *5 (5th Cir. July 30, 2019) ("The text of § 523(a)(8) draws no distinction between debtors perceived as sympathetic or unsympathetic. It is undoubtedly true that each case of claimed "undue hardship" must be examined on its own facts, but reducing the *Brunner/Gerhardt* test to a nebulous "totality of the circumstances" standard risks creating intolerable inconsistency of results. The proposed weaker standard would inevitably judicially expand an area of bankruptcy law that Congress has unambiguously sought to constrict.").

### 2. The Court Then Misapplied The Law Under The "Certainty of Hopelessness" Standard.

Under the proper certainty of hopelessness standard, "a court must evaluate the difference between a debtor's 'temporary dire financial situation'" and the "'certainty of hopelessness.'" *See, e.g., In re Tarpley*, 2016 WL 403150 at *3 (citing *Nys v. Educ. Credit Mgmt. Corp.*, 308 B.R. 436, 444 (B.A.P. 9th Cir.2004) *aff'd,* 446 F.3d 938 (9th Cir.2006)). A court's silence as to "an outcome determinative factual question" is insufficient to warrant discharge. *See, e.g., ECMC v. Acosta-Conniff*, 583 B.R. 275, 283 (M.D. Ala. 2018) (citation omitted). Therefore, "the bankruptcy court should make findings including, but not limited to, [a debtor-plaintiff's] current and future childcare expenses; [a debtor-plaintiff's] current and future child support benefits; [a debtor-plaintiff's] ability to apply for higher paying jobs; the existence of annual pay raises; [a debtor-plaintiff's] decision to stay in the same geographical area; and [a debtor-plaintiff's] ability to pursue additional work alongside her current employment[.]" *See Acosta-Conniff*, 583 B.R. at 283.

The Court here made only conclusory findings, and relied almost exclusively on Ms. Wheat's future speculative tax burden, which is addressed further below. *See* Hr'g Tr. 37:16-19; 38: 7-15; 39: 12-22. The Court conclusorily stated under its analysis of

*Brunner*'s second prong that "the debtor's made <u>an effort</u> to maximize her income . . . she's tried, I think, very hard to maximize her income. She's doing the best she can <u>based on her situation</u>." *See* Hr'g Tr. 38: 19, 39: 12-14 (emphasis added). A ruling under *Brunner*'s second prong that Ms. Wheat is "doing," presently, "the best she can" ignores that the standard requires proof sufficient to support a ruling that there is a certainty of hopeless *for the future* that the debtor will not be able to pay any amounts towards the debt owed during the repayment period. *See, e.g., In re Acosta-Conniff*, 686 F. App'x at 649.

Although the Department incorporates by reference the legal analysis contained in its Pre-Trial Memorandum of Law, it bears repeating briefly herein. This Court in previous rulings has made detailed findings as to whether the debtor-plaintiff had sufficiently established a certainty of hopelessness. For example, *Tarpley v. Sallie Mae, Inc. and ECMC ("In re Tarpley")*, No. 14-80704-DHW, 2016 WL 403150, at *3 (Bankr. M.D. Ala. Feb. 2, 2016), this Court found no certainty of hopeless because the debtor's circumstances were "unlikely to persist" for at least three reasons relevant to Ms. Wheat's case. First, although the debtor's income as a bus driver was presently insufficient to meet his expenses, and although it may have been "difficult to get an additional job to coincide with his schedule during the months in which school is in session, [the debtor-plaintiff] offered no reasons as to why he could not seek alternative employment during the summer months nor did he mention any past failed attempts to do so." *See id.* at *4. Thus, "[a] debtor's desire to maintain a current position is not evidence of undue hardship." *See id.* The same analysis should apply to Ms. Wheat's choice to remain underemployed, to work only three days per week and primarily on the weekends, and to

only seek additional employment if it is less than eighteen miles from her home. See Ex. G-23, Wheat Deposition Transcript, 30: 20-22 (admitting Ms. Wheat only looked for additional employment one time since moving to Luverne in September 2018); Ex. G-23 26: 3-11 (Question: "Have you made any efforts to find any part-time work in Luverne [other than at Troy Regional Medical Center]?" Answer: "Other than that, no. Because that's only 18 miles from home.").

Second, although the debtor in *In re Tarpley* had sustained injuries from a prior car accident, because those "injuries did not negatively affect his driving" and because "he was capable of doing so full time," his arguments that "the [higher grossing opportunities] involved extensive traveling" and that "he wished to stay near family" were not "additional circumstances" creating a certainty of hopelessness. *In re Tarpley*, 2016 WL 403150 at *4. The same analysis should apply to Ms. Wheat's circumstances: although she has certain medical conditions, she conceded they are "not life altering." See Ex. G-23 58: 4-6. Her daughter's more serious diagnosis, Idiopathythic thrombocytopenic purpurea, is "in remission." *See, e.g.,* Hr'g Tr. 69: 6-9. Indeed, Ms. Wheat conceded on numerous occasion that her circumstances, including the stability of her work and the health of her youngest daughter, have been steadily improving:

- <u>Hr'g Tr. 69: 6-9</u>.

   My daughter, she does, she has ITP called Idiopathythic thrombocytopenic purpurea . . . Right now she's kind of in remission[.]

- <u>Ex. G-23 78: 1-6</u>.

   Question: Let me ask it this way: Is [the time you spend on your daughter's medical issues] a little less or a little more than mom?

Answer: Hers now is a little less. . . . [2019] is better than '17, and '18, I would say.

- Ex. G-23 88: 1-2.

Question: [Discussing daughter's medical treatments].

Answer: 2019 with her is like a better year.

- Ex. G-23 69: 6-9.

Question: Okay. So things [at Baptist] are a little better?

Answer: Stable, yes.

And, although Ms. Wheat wishes to work close to home and her family, that is not an "additional circumstance" demonstrating a certainty of hopelessness. *See* Ex. G-23 26: 3-11. These facts, like those in *In re Tarpley*, are not "additional circumstances" creating a certainty of hopelessness; if anything, they demonstrate that Ms. Wheat's future looks brighter than her present.

Finally*, In re Tarpley*, this Court found the debtor's inability to repay was "unlikely to persist" because the stepson for whom he was financially responsible would soon reach "the age of majority," which would "lead to a decrease in expenses for the [debtor's] household." *In re Tarpley*, 2016 WL 403150 at *3-4. The same analysis should apply to Ms. Wheat's circumstance: Ms. Wheat's oldest child is approximately 13 years old. Like the stepson in *In re Tarpley*, Ms. Wheat's son may be able to seek employment at 14 and soon contribute to the household income. *See id.* Also like the debtor in *In re Tarpley*, Ms. Wheat will see a decrease in expenses in the near future as her children reach the age of majority. *See id.* The entirety of the evidence *In re Tarpley* demonstrated not that the debtor's circumstances were likely *to* persist, but instead that they were *unlikely* to persist.

The entirety of Ms. Wheat's evidence, including the dearth of any forward-looking evidence, does the same. As this Court acknowledged, Ms. Wheat is only three years into her repayment period and has made but one, single attempt at maximizing her income since moving back to Alabama. *See* Hr'g Tr. 38: 19-23 ("The Government's point is well taken that we've had a fairly short period of time to look at the debtor's situation, and I get that."); Ex. G-23 30: 20-22 (admitting Ms. Wheat only looked for additional employment one time since moving to Luverne in September 2018); Ex. G-23, Wheat Deposition Transcript, 26: 3-11 (Question: "Have you made any efforts to find any part-time work in Luverne [other than at Troy Regional Medical Center]?" Answer: "Other than that, no. Because that's only 18 miles from home.").

Moreover, this Court found that "over time she <u>will</u> raise her wage." *See* Hr'g Tr. 39: 14-15 (emphasis added). Therefore, the holding in *In re Tarpley* should apply equally here: "[Ms. Wheat's] difficult financial situation is unlikely to continue into the foreseeable future. Because the situation is not likely to persist, [her] circumstances fail to meet the *Brunner* standard to qualify for undue-hardship discharge." *See In re Tarpley*, 2016 WL 403150 at *4.

For these reasons, the Department of Education respectfully submits that the Order Discharging debt was based upon a manifest error of law, and that Ms. Wheat's student loans should not have been discharged. Accordingly, the Order Discharging Debt should be reconsidered or amended.

### B. **Reliance On Ms. Wheat's Speculative Future Tax Bill Is Not An Appropriate Basis For Discharge.**

Ms. Wheat did not supply, and the Court did not cite to, any forwarding-looking evidence demonstrating a "certainty of hopelessness" other than Ms. Wheat's speculative

future tax bill. *See, e.g.,* Hr'g Tr. 38: 7-15. The Court relied nearly exclusively on the "mere possibility of tax liability" as a dispositive basis on which it could discharge Ms. Wheat's student loan debt. *See also Piccinino v. U.S. Dep't of Educ. ("In re Piccinino")*, 577 B.R. 560, 567 (B.A.P. 8th Cir. 2017); Hr'g Tr. 37: 16-19 ("Looking at the totality of the debtor's situation as she sits right now there's no way on God's green earth the debtor's ever going to repay $111,000 at interest even if given 20 or 25 years. It's just not in the cards."); 38: 7-15 ("Anybody can make a zero payment. But that's not the end of the story. The loan continues to accrue interest and then 20, 25 years down the road the debtor is saddled with I think what the Government said if zero payments are made at the end of the repayment period it would be $261,000. So the debtor would have $261,000 taxable income all telescoped into one year which would create a very significant, I'm sure, I suspect over $100,000 non-dischargeable tax liability. A lot of money."); 39: 12-22 ("I think over time she will raise her wage, but I think when you look at -- in other words, if we had a ten or 15 or even $20,000 student loan we'd have a very different situation. Maybe over time she could sort of dig herself out and maybe pay that. But we're not -- that's not what we're talking about. We're talking about $111,000. That's what the loan is, and I'm going to find that there's no way she'll ever be able to repay that even I think to a certainty.").

Such reliance is misplaced for two reasons: it overlooks current tax law with respect to when a debtor must pay taxes on the outstanding balance of her loans at the end of the repayment period, and it ignores that a discharge based solely on projected tax implications, however significant, is improper.

First, IRS Publication 4681 and nationwide case law make clear that a debtor's loan balance and accrued interest at the end of the repayment period is "telescoped into

one year" creating "a very significant . . . non-dischargeable tax liability" only if the borrower's assets exceed her liabilities immediately prior to the cancellation of the debt. *See, e.g,* IRS Publ'n 4681;[1] Hr'g Tr. 38: 12-14. Courts consider this IRS authority−that a debtor only pays if her assets exceed her liabilities−in their analysis of whether a debtor has proven she will suffer an undue hardship by repaying some amount on her loans over the course of her repayment period. *See, e.g., Educ. Credit Mgmt. Corp. v. Jesperson*, 571 F.3d 775, 782 (8th Cir. 2009) ("Likewise, the court's reference to 'a potentially significant tax bill' when any unpaid balance is cancelled after twenty-five years ignored the fact that cancellation results in taxable income only if the borrower has assets exceeding the amount of debt being cancelled.").

A debtor's "entire argument [cannot be] based on [the] belief that they do not now, nor will they in the future, have sufficient disposable income or assets to live above a meager standard of living. If that is true, it is unlikely that they will incur a significant tax burden at the end of the repayment period." *See Chance v. U.S.* ("*In re Chance")*, 600

---

[1] The relevant portion of IRS Publication 4681 states as follows:

> Don't include a canceled debt in income to the extent that you were insolvent immediately before the cancellation. . . . You must be insolvent to qualify for this exclusion. You were insolvent immediately before the cancellation to the extent that the total of all of your liabilities was more than the FMV of all of your assets immediately before the cancellation. For purposes of determining insolvency, assets include the value of everything you own (including assets that serve as collateral for debt and exempt assets, which are beyond the reach of your creditors under the law, such as your interest in a pension plan and the value of your retirement account).

IRS Publ'n 4681, 5-7.

B.R. 51, 61 (Bankr. S.D. Ind. 2019); *Educ. Credit Mgmt. Corp. v. Rhodes*, 464 B.R. 918, 926 (W.D. Wash. 2012) (emphasis added) (holding that the debtor provided no evidence "that he would incur such tax liability, despite the fact that he bore the burden of doing so," and that other courts have "discouraged speculation over the tax implications" of student loans, and "have emphasized that cancellation of debt after 25 years . . . only results in tax liability if the borrower's assets exceed his liabilities immediately prior to the cancellation of the debt.") (citations omitted); *Educ. Credit Mgmt. Corp. v. Bronsdon*, 421 B.R. 27, 37 (D. Mass. 2009) (vacating and remanding because "participation in the [income contingent repayment plan] will not necessarily, or even likely, result in any tax liability").

As the Court noted, Ms. Wheat "obviously can make a zero dollar payment" until her present circumstances improve. *See* Hr'g Tr. 38: 6-7. Assuming, *arguendo*, that the Court contemplated IRS Publication 4861's mandates, implicit in the Court's finding "to a certainty" that "that there's no way she'll ever be able to repay" is the presumption that Ms. Wheat's assets would exceed her liabilities at the end of her repayment period (otherwise, the tax bill would not be in the consideration set in the first place). *See* Hr'g Tr. 39: 20-22. Such a presumption demonstrates, then, that Ms. Wheat's circumstances *will* drastically improve such that she will acquire assets exceeding approximately $260,000 by end of the loan term. *See* Hr'g Tr. 38: 10-11. By the same token, Ms. Wheat would thus not have suffered an undue hardship by making repayments on her student loans commensurate with her income.

As the futility of this exercise demonstrates, against the backdrop of IRS Publication 4861 and the Court's holding that "over time [Ms. Wheat] will raise her wage,"

the Court's finding that Ms. Wheat demonstrated a certainty of hopelessness based nearly exclusively on a speculative future tax bill was improper; the likelihood that Ms. Wheat will be "saddled" with an enormous tax bill at the end of the repayment period is minute, given her assets will have to exceed her student loan tax liability plus any additional accumulated liabilities. *See* Hr'g Tr. 38: 9; IRS Publ'n 4681.

Even putting aside IRS Publication 4681, the Court's outcome-determinative reliance on the tax question was nonetheless improper because a discharge based solely on projected tax implications, however significant, is inappropriate. *See, e.g., In re Piccinino*, 577 B.R. at 567 ("We have previously concluded that the 'mere possibility' of tax liability is not dispositive of undue hardship.") (citation omitted); *In re Chance*, 600 B.R. at 61 (collecting cases and holding "[a] potential tax liability at the end of the repayment period is too speculative to constitute an undue hardship"); *Jones v. Bank One Texas*, 376 B.R. 130, 143 n.11 (W.D. Tex. 2007) (The district court found no undue hardship and noted "that forecasting such tax liability under whatever tax laws will be in effect in 25 years is sheer speculation. Further, forecasting the effect any such liability would have on Debtor's actual standard of living at that time would be ever more speculative.") (citation omitted); *Echelbarger v. U.S. Dep't of Educ.,* 600 B.R. 39, 51 n.7 (Bankr. S.D. Ind. 2019) ("While there may be tax consequences for Debtor upon discharge, a potential tax liability at the end of the repayment period is too speculative to constitute an undue hardship.") (citing *Archibald v. United Student Aid Funds, Inc.*, 280 B.R. 222, 229 (Bankr. S.D. Ind. 2002) ("The charge of the Court under § 523(a)(8) is to determine the issue of undue hardship as of today, not some date in the future.")).

For these reasons, the Department of Education respectfully submits that the Order Discharging debt was based upon a manifest errors of law, and that Ms. Wheat's loans should not have been discharged. Therefore, the Department of Education submits that the Order Discharging Debt should be reconsidered or amended.

### C. Congress Sought To Prevent The Discharge Of Student Loan Debt In Circumstances Such As Ms. Wheat's.

It is critical to the operation of student loan programs that every borrower repay the American taxpayers to the best of their ability. In enacting Bankruptcy Code § 523(a)(8), Congress' aim was to "make it harder for a student to shift his debt responsibility onto the taxpayer." *See In re Cox*, 338 F.3d 1238 at 1242-43. This protects the student loan program for future generations. *See In re McLaney*, 375 B.R. 666 at 673.

This Court and courts nationwide have acknowledged that "Congress included government guaranteed educational loans in the group of presumptively nondischargeable debts because it believed that many student borrowers were abusing the 'fresh start' policy by filing for bankruptcy and obtaining discharge of educational debt soon after graduation, before making any significant attempts at repayment." *See, e.g., Hiatt v. Indiana State Student Assistance Comm'n*, 36 F.3d 21, 24 (7th Cir. 1994) (citations omitted); *In re McLaney*, 375 B.R. 666 at 673 (same). For this reason, Congress initially enacted a five year nondischargeability period for student loan debt. *See Hiatt*, 36 F.3d 21 at 24.

Indeed, as recently as July 31, 2019, the Fifth Circuit reviewed the legislative history of Bankruptcy Code § 523(a)(8) and again reiterated that an "[i]nability to pay one's debts by itself cannot be sufficient; otherwise all bankruptcy litigants would have

undue hardship. The exception would swallow the rule, and Congress's restriction would be meaningless."[2] *See Matter of Thomas*, 2019 WL 3419379 at *5.

Moreover, as the Eleventh Circuit has cautioned, "[t]he government is not twisting the arms of potential students" into taking out federal student loans. *See In re Cox*, 338 F.3d at 1242. "The decision of whether or not to borrow . . . lies with the individual . . . [and] [i]f the leveraged investment of an education does not generate the return the borrower anticipated, the student, not the taxpayers" must accept the consequences. *See In re Cox*, 338 F.3d at 1242-43 (citations and quotations omitted).

Therefore, to borrow from the defendant's briefing *In re Acosta-Conniff*, "[t]here is a serious moral and economic hazard lurking in [Ms. Wheat's] claim to undue hardship: it urges students to irresponsibly borrow student loans . . . without regard for the ability to repay the loans, and then leave the taxpayer holding the bag. Eventually the system will collapse. This is precisely what Congress intended to put an end to when it" enacted Bankruptcy Code § 523(a)(8), and what courts intended to prevent by employing the

---

[2] The Fifth Circuit continued as follows:

> The text of § 523(a)(8) draws no distinction between debtors perceived as sympathetic or unsympathetic. It is undoubtedly true that each case of claimed "undue hardship" must be examined on its own facts, but reducing the *Brunner/Gerhardt* test to a nebulous "totality of the circumstances" standard risks creating intolerable inconsistency of results. The proposed weaker standard would inevitably judicially expand an area of bankruptcy law that Congress has unambiguously sought to constrict.
>
> . . .
>
> Moreover, that Congress understands § 523(a)(8) to proscribe student loan discharges in all but the most severe circumstances is evidenced by proposed amendments submitted in 2015, 2017, and 2019 that seek "to make student loans dischargeable." *See* H.R. 449 (Jan. 21, 2015); H.R. 2366 (May 4, 2017); H.R. 770 (Jan. 24, 2019). Ultimate policy issues raised by Ms. Thomas and the amicus are for Congress, not the courts.

*See Matter of Thomas*, 2019 WL 3419379 at *5.

"certainty of hopelessness" standard. *See, e.g.,* Brief for Appellees at 20, *In re Acosta-Conniff*, 686 F. App'x 647 (No. 16-12884). "As one court explained, '[i]t seems universally accepted ... that 'undue hardship' contemplates unique and extraordinary circumstances. Mere financial adversity is insufficient, for that is the basis of all petitions in bankruptcy." *See In re McLaney*, 375 B.R. at 673 (citations omitted).

Here, Ms. Wheat is only 32 years old. She has decades of life and work ahead of her. Her loans only became due and owing in June 2015, just three years before she filed her adversary proceeding. She has made no payments over $0 on any of her student loans in the last three years, and under an income-based repayment plan, she would continue to owe $0 per month until her circumstances improve. If this Court found that "over time she will raise her wage," then, over time, she can also begin making payments on her loans commensurate with her income. Such a holding is in line with binding precedent in this jurisdiction, with Congressional intent, and with the promise Ms. Wheat mad when borrowing tnes of thousands of dollars in loans that are presumptively nondischargeable in bankruptcy. *See* Bankruptcy Code § 523(a)(8).

### III. CONCLUSION

For the foregoing reasons and for those set forth in Defendant's Pre-Trial Memorandum of Law, the Court should reconsider and revise its Order discharging the student loan debt of Debtor-Plaintiff Monique Denise Wheat.

\* \* \*

Respectfully submitted this 12th day of August, 2019.

                                Louis V. Franklin, Sr.
                                United States Attorney

By:   *s/ Samantha R. Miller*
       Assistant United States Attorney
       Massachusetts Bar Number: 690454
       P.O. Box 197
       Montgomery, AL 36101-0197
       Telephone: (334) 223-7280
       E-mail: Samantha.Miller@usdoj.gov

       R. Randolph Neeley
       Assistant United States Attorney
       Alabama Bar Number: 9083-E56R
       P.O. Box 197
       Montgomery, AL 36104
       Telephone: (334) 223-7280
       E-mail: rand.neeley@usdoj.gov

       *Attorneys for Defendant*

# **CERTIFICATE OF SERVICE**

      I hereby certify that on August 12, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have mailed, by United States Postal Service, a copy of same to the following non-CM/ECF participant:

| | |
|---|---|
| Monique Denise Wheat<br>Pro Se<br>44 Glenwood Drive, Apt. 404<br>Luverne, AL  36049 | Great Lakes Higher Education Corp.<br>P.O. Box 7860<br>Madison, WI 53707 |

                                                  /s/ Samantha R. Miller
                                                  Assistant United States Attorney