# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re | Case No. 18-30745-WRS |
| | Chapter 7 |
| MONIQUE DENISE WHEAT, | |
|       Debtor. | |
| _____ | |
| MONIQUE DENISE WHEAT, | |
|       Plaintiff, | Adv. Proc. No. 18-03041 |
| v. | |
| GREAT LAKES HIGHER EDUCATION CORP. AND UNITED STATES DEPARTMENT OF EDUCATION, | |
|       Defendants. | |

## MEMORANDUM DECISION

Plaintiff, Monique Denise Wheat ("Wheat") filed this adversary proceeding seeking a determination that the student loan debt owed by Wheat to Defendant, United States Department of Education ("USDE") is not excepted from discharge pursuant to 11 U.S.C. § 523(a)(8).[1] Following a trial on July 29, 2019, the Court entered an Order Discharging Debt. (Doc. 33). This adversary proceeding is now before the Court on the Motion to Reconsider, Alter, or Amend Judgment and Memorandum of Law in Support filed by USDE. (Docs. 39 & 40). The Court heard the motion on August 29, 2019, and took the matter under advisement. For the reasons set forth below, the Motion to Reconsider, Alter, or Amend Judgment is DENIED.

---

[1] According to the United States Department of Education, Great Lakes Higher Education Corp. does not have an interest in the student loan debt owed by Wheat. *See* Doc. 37, Transcript of July 29, 2019 Trial at 3.

## I. Facts

Wheat is a 32-year old single mother of three children, between the ages of 8 and 12. She lives in a HUD-assisted apartment in Luverne, Alabama, where she pays $430.00 per month. In the schedules filed with the Court, Wheat listed her net income as $1,876.21 and her monthly expenses as $2,954.00, leaving a negative monthly net income of $1,077.79. (18-30745, Doc. 1).

Wheat received a Bachelor's degree in Criminal Justice from Troy University. She attended Bellevue University to pursue her Master's degree in Clinical Counseling, but did not complete her degree. To finance her education, Wheat incurred student loan debt. USDE is the current holder of Wheat's student loan debt in the amount of $111,000.00 plus interest at a rate of $15.84 per day. She is enrolled in an Income Driven Repayment Plan ("IDRP") with a 25-year term. She has been enrolled in the IDRP for three years. Currently, under the IDRP, Wheat's monthly student loan payments are $0.00. Wheat's monthly obligation under the IDRP will remain at $0.00 each month unless and until her income reaches $40,000.00 annually. At the end of the 25-year term, and assuming no payments, the balance of Wheat's student loan debt will be approximately $261,000.00.

Despite numerous attempts to find employment related to her field of study, Wheat works as a patient tech at Baptist South in Montgomery, Alabama where she receives a base pay of $10.50 per hour plus a shift differential. Wheat's current job schedule allows her to work primarily on the weekends, from Friday to Sunday or into Monday morning, depending on the week. While at work, Wheat's sister cares for Wheat's three children and Wheat pays her sister $300.00 per month.

Wheat's weekend work schedule affords her the opportunity to tend to the medical needs of her daughter and her mother during the week without missing work. Wheat's daughter struggles with several medical issues. She suffers from idiopathic thrombocytopenic purpura ("ITP"), a

blood disorder that requires treatments at UAB hospital in Birmingham, Alabama. While her daughter's condition is currently managed through treatment, she does blood work every three months to check her platelet levels. In 2017, Wheat's daughter spent several months at UAB to get her ITP under control. Additionally, her daughter is being referred for additional medical testing to a urologist and a gastrointestinal doctor. On top of these ailments, Wheat's daughter has severe allergies that require her to carry an EpiPen. Wheat also cares for her mother, who has been diagnosed with schizophrenia, bi-polar depression, and congested heart failure. Wheat helps her mother manage her medication and takes her to doctor's appointments during the week. Furthermore, Wheat herself suffers from respiratory issues that she deals with on a daily basis.

## II. Law

### A. Jurisdiction

This Court has jurisdiction to hear these matters pursuant to 28 U.S.C. § 1334(b) and the District Court's General Order of Reference dated April 25, 1985. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).

### B. The Motion to Reconsider, Alter, or Amend Judgment is denied as USDE has failed to carry its burden.

A motion to reconsider, alter, or amend a judgment, if filed within 14 days of the judgment, is governed by Federal Rule of Bankruptcy Procedure 9023, which incorporates Rule 59 of the Federal Rules of Civil Procedure. To warrant reconsideration, a motion must establish one of the following applies:

1. An intervening change in the law,
2. Consideration of newly discovered evidence, or

3. To correct clear error or prevent manifest injustice.

*Jacobs v. Tempur-Pedic Int'l, Inc.,* 626 F.3d 1327, 1344 (11th Cir. 2010); *In re Breland*, 614 B.R. 739, 741-42 (Bankr. S.D. Ala. 2020); *In re Muhammad*, 536 B.R. 469, 477 (Bankr. M.D. Ala. 2015).

USDE argues the Court committed manifest errors of law to warrant reconsideration when it made a finding of undue hardship under 11 U.S.C. § 523(a)(8) and discharged the student loan debt owed by Wheat to USDE. (Doc. 40). USDE advances three arguments in support of its motion to reconsider: (1) "the Court failed to adhere to and apply binding precedent when it held that the 'certainty of hopelessness' standard was 'contrary to the law;'" (2) "the Court relied on the 'mere possibility of tax liability' as a dispositive basis on which it could discharge [] Wheat's student loan debt;" and (3) "the Court failed to fulfill Congress's [sic] clear intent that the Bankruptcy Code § 523(a)(8) proscribe student loan discharges in all but the most severe circumstances." (Doc. 40). After considering the brief filed by USDE and reviewing the trial transcript, the Court finds nothing in the record to show it committed manifest errors of law when it held the student loan debt owed by Wheat is not excepted from discharge.

**1. The three-part *Brunner* test is the standard in the Eleventh Circuit for determining undue hardship under 11 U.S.C. § 523(a)(8).**

USDE's first argument in support of its motion to reconsider is "the Court failed to adhere to and apply binding precedent when it held that the 'certainty of hopelessness' standard was 'contrary to the law.'" (Doc. 40). Since the Eleventh Circuit's adoption of the *Brunner* test through *In re Cox*, 338 F.3d 1238 (11th Cir. 2003), in 2003, the *Brunner* test has been the standard in this Circuit for determining undue hardship under 11 U.S.C. § 523(a)(8). Under the *Brunner* test, a debtor must prove, by a preponderance of the evidence, the following components:

Case 18-03041    Doc 50    Filed 01/25/22    Entered 01/25/22 16:07:16    Desc Main
Document      Page 4 of 19

(1) That the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans,
(2) That additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans, and
(3) That the debtor has made good faith efforts to repay the loans.

*In re Cox*, 338 F.3d at 1241; *In re Brunner*, 831 F.2d 395, 396 (2d Cir. 1987) (per curiam); *In re Mosley*, 494 F.3d 1320, 1324 (11th Cir. 2007).

Through application of the *Brunner* test, courts have tried to "flesh out" this three-prong test. Notably, when applying the second Brunner prong, the Court, in *In re Mosley*, stated that

> [u]nder *Brunner*, undue hardship does not exist simply because the debtor presently is unable to repay his or her student loans; the inability to pay must be 'likely to continue for a significant time,' such that there is a 'certainty of hopelessness' that the debtor will be able to repay the loans within the repayment period.

494 F.3d at 1326 (citations omitted).

The "certainty of hopelessness" language, though dicta, has made its way into numerous decisions since *In re Mosley*, including decisions authored by this Court. *See In re Acosta-Conniff*, No. 12-31448-WRS, 2021 WL 4485684, at *15 (Bankr. M.D. Ala. Sept. 1, 2021) (noting that the undue hardship "determination is not based on a debtor's current inability to pay, but rather a showing that the inability to pay is likely to continue for a significant time, thereby creating a 'certainty of hopelessness' that a debtor will be able to repay the loans"). This "certainty of hopelessness" language was used by the *Mosley* Court, and this Court, to emphasize that a finding of undue hardship goes beyond a current inability to repay, but that, because of additional present circumstances, a debtor's inability to repay is likely to continue for so long that it is more likely than not that a debtor will never be able to repay the debt. It is a calculated estimation of a debtor's future financial circumstances. *See In re Acosta-Conniff*, 686 F. App'x 647, 649 (11th Cir. 2017)

("The second prong looks to the future to determine the unlikelihood that the debtor could become able to repay the loan.")).

USDE relies on this "certainty of hopelessness" language in its defense against an undue hardship determination. However, USDE's interpretation of the "certainty of hopelessness" language would have this Court make a finding that because there is no evidence to show Wheat's circumstances will never change, then she fails to satisfy the second *Brunner* prong. (Doc. 37, Transcript of July 29, 2019 Trial at 23) ("[T]here's nothing to suggest that she would never be able to make any payment towards these loans such that they should be discharged today. That's the sum and substance."). But, that is simply not the standard. And, frankly, USDE's interpretation would swallow the rule and make it impossible for any debtor to ever satisfy the second prong. The second *Brunner* prong does not require Wheat to prove impossibility; instead, it requires the Court to examine any additional circumstances that currently exist to show that Wheat's current financial situation is likely to continue for so long that the likelihood of Wheat ever being able to repay her loan is minimal. *See In re Cox*, 338 F.3d at 1241; *In re Brunner*, 831 F.2d at 396; *In re Mosley*, 494 F.3d at 1326.

It is important to note the Court properly applied all three *Brunner* prongs. Furthermore, it is not improper for a court to express negative thoughts on a rule of law, as long as the law is ultimately followed. *See In re Mosley*, 494 F.3d at 1327 (noting that even though the bankruptcy court "expressed concern that a strict application of *Brunner* treats too harshly debtors living in abject poverty . . . the court ultimately analyzed [debtor's] case under the complete *Brunner* framework as our precedent requires.") (citations omitted). While the Court may disagree with the emphasis that USDE places on the "certainty of hopelessness" language used when applying prong 2 of *Brunner*, the Court still made a finding that, in light of Wheat's circumstances, "there's

-6-

no way she'll ever be able to repay [the debt] even I think to a certainty." (Doc. 37, Transcript of July 29, 2019 Trial at 39). Since the Court ultimately applied the *Brunner* test, the binding precedent of this Circuit, nothing in the record shows the Court committed clear error or allowed manifest injustice to warrant reconsideration.

    **2.    USDE mischaracterizes the Court's reasoning for its undue hardship determination when it asserts the Court relied on Wheat's potential future tax liability as a dispositive basis for discharge.**

USDE next argues the Court should reconsider its decision to discharge Wheat's student loan debt because "the Court relied on the 'mere possibility of tax liability' as a dispositive basis" for discharge. (Doc. 40). For USDE to state that the Court relied nearly exclusively on Wheat's speculative future tax bill for a basis to discharge Wheat's student loan debt is inaccurate and ignores the remainder of the Court's reasoning. As explained in Part II.B.3. infra, after applying the three *Brunner* prongs, the Court determined Wheat satisfied her burden of showing that excepting her debt from discharge would impose an undue hardship under 11 U.S.C. § 523(a)(8).

    Certainly, the Court expressed concerns regarding Wheat's future tax liability when faced with a current student loan debt of $111,000.00 and when compared with the end of the 25-year term, and assuming no payments, a balance of approximately $261,000.00. The Court acknowledged the potential tax consequences under the Court's analysis of the first *Brunner* prong. This Court has made it clear in prior decisions that it does not read the *Brunner* test as requiring the Court to consider any lesser debt amount, specifically under an income contingent repayment plan, or in this case, an IDRP, when evaluating the first *Brunner* prong. *See In re Acosta-Conniff*, No. 12-31448-WRS, 2021 WL 4485684, at *17 (noting this Court's opinion "that consideration of an ICRP [under prong one] violates *Brunner* and *Cox* and is contrary to 11 U.S.C. § 523(a)(8)").

Case 18-03041    Doc 50    Filed 01/25/22    Entered 01/25/22 16:07:16    Desc Main
Document      Page 7 of 19

However, the Court recognized Wheat had already enrolled in an IDRP and noted the potential tax obligations as a result of her enrollment. It was certainly reasonable for this Court, as other courts have done, to acknowledge the potential sizeable future tax bill. *See In re Mosley*, 494 F.3d at 1327 (recognizing that repayment programs are "not always a viable option for debtors . . ., as it may require them effectively to 'trad[e] one nondischargeable debtor for another' because any debt that is discharged under the program is treated as taxable income."); *see also In re Wolfe*, 501 B.R. 426, 436 (Bankr. M.D. Fla. 2013) (noting that after the expiration of the repayment period under income contingent repayment plans, debtors will often incur tax liability due to the amount of debt forgiven being treated as taxable income). This is not a novel concept. Therefore, the Court's acknowledgement of Wheat's potential tax liability was not improper and was not the dipositive basis for this Court's undue hardship determination. Accordingly, reconsideration is not warranted on this basis.

### 3. Wheat has satisfied her burden of showing that excepting her student loan debt from discharge would impose an undue hardship under 11 U.S.C. § 523(a)(8) by satisfying the three-part *Brunner* test.

USDE's third, and final, argument in support of its motion to reconsider is a general "catch all" argument that the Court erred in discharging Wheat's student loan debt because "the Court failed to fulfill Congress's [sic] clear intent that the Bankruptcy Code § 523(a)(8) proscribe student loan discharges in all but the most severe circumstances." (Doc. 40). Under 11 U.S.C. § 523(a)(8), student loan debt is generally excepted from discharge, unless a debtor can show that "excepting such debt from discharge . . . will impose an undue hardship on the debtor and debtor's dependents." As set forth in Part II.B.1. above, the Eleventh Circuit adopted the three-prong test set out in *In re Brunner*, for determining whether excepting a debt from discharge would impose an undue hardship on a debtor. *In re Cox*, 338 F.3d 1238; *In re Brunner*, 831 F.2d 395. The Court

-8-

Case 18-03041    Doc 50    Filed 01/25/22    Entered 01/25/22 16:07:16    Desc Main
Document    Page 8 of 19

properly applied the *Brunner* test to the facts of Wheat's case and determined that Wheat satisfied the undue hardship standard, and subsequently discharged her student loan debt. USDE cannot argue "the Court failed to fulfill Congress's [sic] clear intent" when the Court followed the process outlined by Congress – making a finding of undue hardship – to determine Wheat's student loan debt is not excepted from discharge. Accordingly, USDE's argument has no merit.

    a.    **Based on her current income and expenses, Wheat cannot maintain a minimal standard of living for herself and her dependents if forced to repay the loans.**

The first *Brunner* prong requires the Court to determine whether Wheat can maintain a "minimal" standard of living for herself and her dependents if forced to repay the student loan debt. *In re Cox*, 338 F.3d at 1241; *In re Brunner*, 831 F.2d at 396. A minimal standard of living requires "more than a showing of tight finances." *In re Johnson*, 550 B.R. 874, 879 (Bankr. M.D. Ala. 2016) (citations omitted). It "lies somewhere between poverty and mere difficulty." *In re McLaney*, 375 B.R. 666, 674 (M.D. Ala. 2007). It is defined as "a measure of comfort, supported by a level of income, sufficient to pay the costs of specific items recognized by both subjective and objective criteria as basic necessities." *In re Johnson*, 550 B.R. at 879 (quoting *In re Ivory*, 269 B.R. 890, 899 (Bankr. N.D. Ala. 2001)). This requires the Court to analyze Wheat's current monthly income and reasonable monthly expenses.

    i.    **Wheat's Monthly Income**

According to Schedule I filed with the Court, Wheat's combined monthly income is $1,876.21. (18-30745, Doc. 1). This amount is comprised of Wheat's net monthly payroll income of $999.21, plus $400.00 in monthly child support payments, and $477.00 per month in "other government assistance." Wheat noted in her schedules that she anticipated an increase of $148.00

per month once "uniform fees" were paid, but that increase would be offset by a monthly reduction in child support payments of $250.00.[2] After adjusting her monthly income to account for these changes, the Court finds Wheat's total currently monthly income is $1,774.21.

### ii. Wheat's Reasonable Monthly Expenses

In Schedule J, Wheat provided an itemized list of her current expenses. (18-30745, Doc. 1). Wheat's expenses include a monthly mortgage payment of $500.00. At trial, Wheat testified she now lives in a HUD-assisted apartment in Luverne and pays $430.00 per month. She also pays $464.00 per month for utilities, which includes electricity, water and sewer, cable, landline telephone and home internet, and cellular telephones. Wheat has allotted $650.00 per month for food expenses for herself and her three children. She pays $300.00 per month for childcare expenses, which she pays to her sister for caring for her three children while she works on the weekends. She also lists a clothing budget of $150.00 per month and personal care products and services at $50.00 per month. Wheat budgets $150.00 per month in medical and dental expenses. She also lists $40.00 per month in entertainment expenses. Wheat's car payment is $250.00 per month and her other transportation expenses, exclusive of the car payment and insurance, are $200.00 per month. But, her schedules purport she plans to surrender her 2012 Chevrolet Malibu, which will decrease her monthly expenses by $250.00. Finally, Wheat lists "other payments" in the amount of $200.00 per month for her mother's medicine, transportation, and personal care.

---

[2] At the hearing on the motion to reconsider on August 29, 2019, Wheat testified that she no longer received any child support from her ex-husband after he was diagnosed with several mental disorders that affected his ability to maintain employment. However, because that information was disclosed to the Court after the Court made a determination of undue hardship, the Court will not include it in the discussion of Wheat's income at the time of the trial on July 29, 2019.

Wheat does not allocate for renter's insurance or maintenance expenses, insurance amounts, or charitable contributions.

The only expense disputed by USDE is the $300.00 monthly payment to Wheat's sister for childcare expenses. However, based on the Court's own experiences, $300.00 per month for weekend childcare expenses for three children is more than reasonable. *In re Ivory*, 269 B.R. at 899 (Courts rely on "common sense, knowledge gained from ordinary observations in daily life, and general experience" to determine the reasonableness of expenses.). After adjusting her monthly expenses by reducing her rental expense from $500.00 to $430.00 and eliminating the $250.00 car payment expense, her monthly expenses total $2,634.00. The Court finds Wheat has budgeted for her and her three children's most basic needs, and that the amounts stated are reasonable and necessary expenses.

Based on her schedules, Wheat earns $1,876.21 per month and her monthly expenses are $2,954.00, leaving a negative monthly net income of $1,077.79. (18-30745, Doc. 1). However, after adjusting her income and expenses accordingly, Wheat's monthly income is $1,774.21 and her reasonable monthly expenses total $2,634.00, leaving an adjusted negative monthly net income of $859.79.

In considering whether a debtor can maintain a minimal standard of living, courts often find the poverty guidelines instructive. "Although the *Brunner* test does not require that the debtor's income to be at or below the poverty line, a debtor whose income falls below the established poverty level presumptively meets the first prong." *In re Mosley*, 330 B.R. 832, 841 (Bankr. N.D. Ga. 2005), *subsequently aff'd*, 494 F.3d 1320 (11th Cir. 2007); *see also In re Mosley*, 494 F.3d at 1325 (student loan holder did not contest the bankruptcy court's finding that prong one of *Brunner* was satisfied by debtor living below the poverty line). According to the United States

Department of Health and Human Services 2019 Poverty Guidelines, at the time of the trial, the federal poverty guideline for a household size of four was $25,750.00. *Annual Update of the HHS Poverty Guidelines*, 84 Fed. Reg. 1167-02 (February 1, 2019). Based on Wheat's monthly income, her annual income is $21,290.52. Wheat's income is clearly below the poverty line. Even without considering any repayment amount on the student loan debt, Wheat cannot afford her and her children's basic needs. As such, the Court finds Wheat does not maintain a minimal standard of living.

Wheat's present circumstances do not allow her to make any payments towards her student loan debt, as further evidenced by the $0.00 per month payment under the IDRP. At trial, counsel for USDE conceded that Wheat cannot maintain a minimal standard of living for herself and her dependents and repay her student loan debt.

> [Mr. Neeley]: First, I'm going to be very clear. We don't dispute that currently Ms. Wheat is unable to meet a minimal -- maintain the minimal standard of living while making any payment other than that which she's currently making in accordance with the IDRP plan that she's on which is zero dollars. However, we assert that that zero payment should be calculated into the analysis as to whether or not these loans should be discharged.

(Doc. 37, Transcript of July 29, 2019 Trial at 13). Instead, USDE makes an alternative argument that because under the IDRP Wheat is obligated to pay zero dollars per month, then the Court must consider whether Wheat is able to make that payment and maintain a minimal standard of living. The Court disagrees with USDE's assertion that it must consider Wheat's enrollment in an IDRP and whether she can pay a lesser amount under the repayment plan than the full balance owed on the student loan debt under prong one of *Brunner*.

If the Court were to follow USDE's reasoning, the Court is in a "catch-22" situation: Wheat can satisfy prong one of *Brunner* because she cannot maintain a minimal standard of living, as evidenced by her zero dollar per month payment requirement under her IDRP, but also Wheat

-12-

Case 18-03041   Doc 50   Filed 01/25/22   Entered 01/25/22 16:07:16   Desc Main
Document      Page 12 of 19

cannot satisfy prong one of *Brunner* because she can maintain a minimal standard of living and repay the debt at zero dollars per month. Instead, the Court looks to whether Wheat can maintain a minimal standard of living without any consideration of her loan repayment amount. *See In re Douglas*, 366 B.R. 241, 255 (Bankr. M.D. Ga. 2007) ("Satisfaction of this prong is not dependent on the payment amount, but rather a determination by the Court of whether the debtor can maintain a minimal standard of living if being required to service the student loan.").

In light of Wheat's currently monthly income and reasonable monthly expenses, it is not necessary for the Court to consider the repayment amount because, based on Wheat's current financial situation, she is unable to maintain a minimal standard of living for herself and her dependents, exclusive of any repayment amount owed on the student loan debt. In other words, even paying zero dollars per month toward her student loan debt, Wheat cannot maintain a minimal standard of living for herself and her three children. Furthermore, even if the Court is required to consider Wheat's zero dollar per month payment amount under the IDRP, the Court is not precluded from finding undue hardship under *Brunner*. *See In re McLaney*, 375 B.R. at 667 (citing to *In re Durrani*, 311 B.R. 496, 506 (Bankr.N.D.Ill. 2004) wherein the bankruptcy court cited to numerous cases finding undue hardship even when the amount owed under a repayment plan was as low as $0.00 per month).

In sum, based on Wheat's monthly income and reasonable monthly expenses, Wheat cannot maintain a minimal standard of living for herself and her dependents if forced to repay her student loan debt. Even considering that Wheat is obligated to pay zero dollars per month toward her student loan debt under the IDRP, Wheat is unable to maintain a minimal standard of living, exclusive of any payment toward her debt. Accordingly, the Court finds Wheat has satisfied her burden under the first *Brunner* prong.

Case 18-03041   Doc 50   Filed 01/25/22   Entered 01/25/22 16:07:16   Desc Main
Document      Page 13 of 19

**b. Additional circumstances exist indicating Wheat's state of affairs is likely to persist for a significant portion of the repayment period of the student loan debt.**

The second *Brunner* prong requires the Court to determine whether additional circumstances exist to indicate Wheat's present financial situation is likely to persist for a significant portion of the repayment period of the student loan debt. *See In re Brunner*, 831 F.2d at 396; *In re Cox*, 338 F.3d at 1241. The crux of USDE's argument for excepting the debt from discharge rests in prong two of the *Brunner* test. However, as set forth in Part II.B.1. above, the Court disagrees with USDE's interpretation of prong two as requiring the Court to make a finding that Wheat's circumstances will never change for Wheat to satisfy prong two. In closing remarks to the Court, counsel for USDE stated as follows:

> [Mr. Neeley]: Your Honor, at the risk of being somewhat redundant again, let me make sure the Court understands where I am. Our primary argument is it was on the second standard. And that's not been shown here, that there is a circumstance such that we could not foresee or there's a certainty that her life situation will change. As I said earlier the children ages 12 to 8 in a reasonable amount of time will reach an age of majority and will be on their own, and in fact may be able to help contribute to the payment of this debt.

(Doc. 37, Transcript of July 29, 2019 Trial at 37).

In analyzing what additional circumstances exist that could impact a debtor's future ability to pay, "[t]he Court must consider factors such as 'the debtor's age, age of the debtor's dependants, debtor's education, work and income history, physical and mental health, and other relevant circumstances.'" *In re Johnson*, 550 B.R. at 880 (citations omitted).

Wheat is a 32-year old, single mother of three children. Her children range in age from 8 to 12. As such, she will be financially responsible for her three children until they reach the age of majority, and likely afterwards, as children often remain financially dependent on their parents long after legal dependency. Furthermore, Wheat has been under the IDRP for three years. Her

youngest child will reach the age of majority in 10 years. At that time, Wheat will be halfway through her 25-year repayment plan. And, the Court is certainly not going to a set a precedent by making a finding that Wheat's children, upon reaching the age of majority, will be responsible for contributing toward Wheat's student loan payment as counsel for USDE suggests.

Wheat holds a Bachelor's degree in Criminal Justice. Having been unable to find work in her field of study, Wheat currently works as a patient tech at Baptist South in Montgomery, Alabama. She primarily works on the weekends and receives a base pay of $10.50 per hour plus a shift differential. Wheat's lack of job prospects are further exacerbated by her need for a more flexible workweek schedule to care for daughter and mother, who both suffer from ongoing medical issues that require Wheat's availability during the week. Wheat is responsible for both her mother and her daughter's medical treatment. Her daughter suffers from a blood disorder that requires constant monitoring. She is also undergoing additional medical testing with a urologist and a gastrointestinal doctor for other health issues. Wheat's mother has been diagnosed with schizophrenia and bi-polar depression. She also has congested heart failure. Wheat suffers from respiratory issues. Her current employment allows her to earn income that is necessary to support her family and gives her the required flexibility of only working weekends in order to provide medical care for her daughter and her mother. Due to the life-long health conditions of her daughter and mother, Wheat's job options are limited and her earning potential is restricted.

USDE asserts Wheat is underemployed at her current job and argues there is room for part-time or full-time work during the week. However, Wheat maintains a 36-hour work week with her current employer. Simply because her work schedule requires her to work through the weekend, instead of a traditional 8:00-5:00, five-day per week job does not mean that she is underemployed or attempting to avoid work.

The sum of USDE's argument is that Wheat's present financial circumstances are "dire," but have not been "dire" for long enough. However, the second *Brunner* prong is a forward-looking test; it requires the Court to take Wheat's current circumstances and make a prediction about the foreseeable future. While Wheat is relatively early into her repayment plan, her financial situation does not appear likely to change in the foreseeable future as a result of the additional circumstances present in her life, including her youngest child not reaching the age of majority for 10 more years, her limited employment options, and the health conditions of her daughter and mother. Because of these persistent circumstances, it is less likely that Wheat's financial circumstances will change to allow for repayment. Accordingly, the Court finds Wheat has satisfied her burden under the second *Brunner* prong.

### c. Wheat has demonstrated good faith efforts to repay the loans.

Under the third *Brunner* prong, the Court must determine whether Wheat has made good faith efforts to repay her loan. It is not necessary for a debtor to show actual payments have been made toward the debt. *See In re McLaney*, 375 B.R. at 677 ("Obviously, requiring debtors to make actual payments to prove good faith would preclude relief to the very debtors Congress sought to protect under § 523(a)(8)—debtors who are financially unable to repay their student loans without undue hardship.") While Wheat has not made any payments on her student loan debt, she has enrolled in an IDRP. Under the IDRP, Wheat is currently obligated to pay zero dollars per month until her annual income reaches or exceeds $40,000.00. Wheat's good faith efforts to repay her student loan debt are evidenced by her efforts to apply for and enroll in an IDRP. *See In re Mosley*, 494 F.3d at 1327 (recognizing that "a debtor's effort to negotiate a repayment plan certainly demonstrates good faith").

Additionally, "[g]ood faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses; his default should result, not from his choices, but from factors beyond his reasonable control." *Id.* (citations omitted). At trial, counsel for USDE conceded that whether Wheat is able to minimize her expenses is not of consideration. (Doc. 37, Transcript of July 29, 2019 Trial at 15-16) ("We don't have any dispute that Ms. Wheat is doing the best she can do with her income, you know. Whether she can minimize expenses that's really not on the table in our opinion. But the crucial question is can she maximize her income?"). Instead, USDE argues Wheat is underemployed and questions whether Wheat has made adequate attempts to maximize her income.

Wheat testified she spent five years, from 2012 through 2017, applying for jobs in the fields of criminal justice and sociology, but was unable to secure employment. She testified that she applied for jobs in Georgia, Alabama, and Alaska. Despite multiple attempts to gain employment in her field, Wheat testified she would either not be granted an interview or would not receive a call back after an interview.

USDE attempts to use Wheat's past employment to demonstrate Wheat is foregoing other employment opportunities in the social services field that pay more than the $10.50 per hour that she currently earns. USDE argues, and Wheat admits, that her income was significantly higher when she was living and working in Alaska. At that time, Wheat was earning, on the high end, $20.00 per hour at her employment. While it is true that Wheat obtained employment at a much higher rate of pay while in Alaska, it seems USDE fails to account for the increased expenses associated with living in Alaska.

Since her move back to Alabama, Wheat has continued to search for other employment, including applying to the Montgomery Police Department. Wheat testified that once her efforts to

-17-

Case 18-03041   Doc 50   Filed 01/25/22   Entered 01/25/22 16:07:16   Desc Main
Document    Page 17 of 19

obtain employment in her field of study seemed futile, she paid out of pocket for CNA classes because she was still unemployed and needed to gain employment to provide for her family. This eventually led to her current employment as a patient tech at Baptist South in Montgomery, Alabama. USDE argues that because Wheat currently works weekends only and her children are in school from 8:00 to 3:00 during the weekdays, that Wheat could use that time to work part-time to add additional income. Again, Wheat currently works 36 hours each week. Simply because her work schedule does not follow a traditional schedule does not mean Wheat is failing to work as much as she is capable. Furthermore, Wheat explained that she is the caretaker for her mother, who suffers from severe mental issues that require attention to medication and multiple doctor's appointments and her daughter, who also suffers from medical issues that require attention and multiple doctor's appointments. Instead of putting her employment at risk by missing work to take her mother and her daughter to appointments, she works full-time on the weekends to manage her employment obligations and her family obligations.

The Court recognizes Wheat's efforts to enroll in an IDRP. Furthermore, the Court finds Wheat has made efforts to maximize her income and minimize her expenses. As such, the Court finds Wheat has demonstrated her good faith efforts to repay the loan. Accordingly, Wheat has satisfied the third *Brunner* prong.

### III. Conclusion

For the foregoing reasons, the Court finds it correctly concluded that excepting Wheat's student loan debt from discharge would impose an undue hardship under 11 U.S.C. § 523(a)(8), and discharge of the student loan debt was proper. Furthermore, USDE failed to demonstrate the Court committed manifest errors of law to warrant reconsideration. Accordingly, it is ORDERED that USDE's motion to reconsider is DENIED.

Done this 25th day of January, 2022.

William R. Sawyer
United States Bankruptcy Judge

c: Debtor/Plaintiff, *Pro se*
James J. DuBois, Attorney for Defendant, United States Department of Education
Samantha Miller, Attorney for Defendant, United States Department of Education
United States Department of Education
Great Lakes Higher Education Corp.